**SO ORDERED.**

**SIGNED this 17 day of August, 2010.**



_Dale L. Somers_
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

**Opinion designated for on-line and print publication**
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

In re:

**ERNESTINO ORTEGA and**
**MARTHA ORTEGA,**

                  **DEBTORS.**

**CASE NO.  09-11696**
**CHAPTER 7**

**MEMORANDUM AND OPINION GRANTING**
**DEBTORS' MOTION TO CONVERT FROM CHAPTER 7 TO CHAPTER 13**

      This case concerns the limitation of a debtor's right to convert from Chapter 7 to Chapter

13 under the Supreme Court's decision in _Marrama v. Citizens Bank of Massachusetts_.[1]  Trial

was held on February 1, 2010 on the Debtors' Motion to Convert from Chapter 7 to Chapter 13,[2]

---

    [1] 549 U.S. 365 (2007).

    [2] This  Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the
Standing Order of the United States District Court for the District of Kansas that exercised authority
conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code
and all proceedings arising under the Code or arising in or related to a case under the Code, effective July
10, 1984.  A motion to convert is a core proceeding which ths Court may hear and determine as provided

to which Creditor Diane Barger objected, based upon the good faith standard of *Marrama*.  The

Debtors appeared in person and by their counsel Elizabeth A. Carson of Bruce, Bruce &

Lehman, LLC.  Diane Barger appeared pro se.  There were no other appearances.  After

receiving the evidence, admitting exhibits, and hearing the arguments of counsel, the Court took

the matter under advisement.  The Court is now ready to rule and, for the reasons stated below,

overrules the objection and grants the Debtors' motion to convert.

## FINDINGS OF FACT.

The Debtors filed a voluntary petition under Chapter 7 on June 1, 2009.  They moved to

convert to Chapter 13 on September 17, 2009.  Diane Barger, an attorney with offices in

Wichita, Kansas, objected to the motion on the grounds that it was not filed in good faith, relying

upon the Supreme Court's decision in *Marrama*.

The Debtors reside in Garden City, Kansas.  Mr. Ortega is employed in the meat-packing

industry, and Mrs. Ortega earns minimal income providing daycare to children in her home.  The

Debtors' primary language is Spanish.  Although Mr. Ortega understands some spoken English,

he can not speak, read, or write English.  Mrs. Ortega cannot understand, speak, read, or write

English.  They testified through the assistance of an interpreter.

When the bankruptcy case was filed, Mr. Ortega (hereafter "Debtor"), but not Mrs.

Ortega, was a defendant in a civil case filed by Diane Barger in the District Court of Finney

County, Kansas, on or about December 2, 2008.  In that case, Count I seeks a judgment for

$3,772.12, plus interest and fees, based on the allegations that:  (1) Ms. Barger represented

---

in 28 U.S.C.§ 157(b)(2)(A).  There is no objection to venue or jurisdiction over the parties.

2

Debtor's son, Ramon Ortega, in a domestic-relations case in Finney County, Kansas; (2) Debtor guaranteed payment of Ms. Barger's fees; and (3) $3,772.12, plus interest and costs, is due and owing. In Count II, Ms. Barger prays for a judgment in excess of $75,000 based upon allegations that on an about August 1, 2008, Debtor attacked Ms. Barger by engaging in intentional, willful, and malicious conduct designed to defame her and ruin her professional reputation by communicating to a third party, through writings, allegedly wrongful conduct by Ms. Barger during her representation of Ramon Ortega and in her communications with Debtor. The written accusations are included in two letters and an affidavit, all dated in early August 2008. The letters are addressed to Ms. Barger with copies to David M. Rapp. Ms. Barger testified that Mr. Rapp is a member of the Wichita bar who was assigned to investigate an ethical complaint against Ms. Barger filed by a disgruntled former employee, which complaint has been dismissed. Although the affidavit is not addressed to Mr. Rapp, it relates to the matters stated in the letters and was signed three days after the second letter. The documents are typewritten and appear to bear the Debtor's signature. Since Debtor can neither read nor write English, the question arises of who wrote the letters, but Ms. Barger testified that this question has not been answered by a court.

As stated above, the Debtors filed for relief under Chapter 7 on June 1, 2009. Schedule A lists two real properties in Garden City, one located on North 6th Street, which is the Debtors' residence and homestead, and one located on Pearl Street. The statement of intention indicates the Debtors will reaffirm debts on their home and on one vehicle. Although the Pearl Street property is shown on Schedule A as subject to a bank lien, it is not included on the statement of intention. Nevertheless, Debtor unequivocally testified that they intend to surrender the property

to the lender. The schedules disclose the Finney County litigation. Ms. Barger is included as an unsecured creditor of unknown amount. Other unsecured debts include credit card debt of approximately $28,000 and some medical expenses. The Debtors' income is below the applicable median family income.

On August 31, 2009, the date that the period to object to discharge expired, Ms. Barger filed an nondischargeability adversary complaint against Debtor, but not Mrs. Ortega.[3] The factual allegations are the same as alleged in Count II of the Finney County case. Ms. Barger claims that Debtor's alleged liability to her in excess of $75,000 for willful and malicious conduct is nondischargeable under 11 U.S.C. § 523(a)(6).

On September 17, 2009, the Debtors filed the motion to convert from Chapter 7 to Chapter 13. Debtor testified that: (1) The motion to convert was filed to avoid litigation of the adversary proceeding, (2) he had already incurred attorney's fees for representation in defense of the Finney County case, and (3) he knew defense of the adversary case would be expensive. He intends to include Ms. Barger as an unsecured creditor to be paid through the Debtors' Chapter 13 plan.

Ms. Barger objected to the conversion. She alleges that the Debtors' "bad faith and abuse of the bankruptcy process makes them ineligible for Chapter 13 conversion."[4]

**ANALYSIS.**

Section 706(a) of the Code provides, "The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted

---

[3] Case no. 09-5178.

[4] Doc. 25, p. 2. It is curious that in her brief, Ms. Barger alleges bad faith by both the Debtors, but she has filed the dischargeability complaint and objected to the conversion only as to Debtor .

4

under section 1112, 1208, or 1307 of this title." Prior to the Supreme Court's 2007 decision in
*Marrama*,[5] the Tenth Circuit BAP had held that a debtor in a Chapter 7 case that had not
previously been converted had a one-time right to convert to a case under another chapter for
which he was eligible, and that the motion to convert could not be denied for any reason not set
forth in the conversion statute.[6] In *Marrama*, the Supreme Court disagreed with this
interpretation of the Code, and held that a Chapter 7 debtor may forfeit his right to proceed under
Chapter 13 if the converted case would be subject to immediate dismissal or conversion for
cause under § 1307(c).

 The facts in *Marrama*[7] are instructive. When Marrama filed his petition, his schedules
included a number of statements about his principal asset, a house in Maine, which were
misleading or inaccurate. Although he disclosed that he was the sole beneficiary of a trust that
owned the property, he listed its value as zero. He also denied having made any transfers other
than in the ordinary course of business during the year preceding the filing. In fact, the house
had substantial value and had been transferred to the newly-created trust for no consideration
seven months before his bankruptcy filing. Marrama's defense was scrivener's error. He also
attempted to obtain a homestead exemption on rental property and failed to disclose an
anticipated tax refund. Marrama filed his motion to convert to Chapter 13 after the Chapter 7
trustee announced, following the meeting of creditors, that he intended to recover the Maine
property for the estate. The bankruptcy judge denied the request for conversion, and both the

---

[5] 549 U.S. 365.

[6] *Miller v. Miller (In re Miller)*, 303 B.R. 471 (10 Cir. BAP 2003).

[7] 549 U.S. at 368-69.

5

First Circuit BAP and First Circuit Court of Appeals affirmed. The Supreme Court agreed with the lower courts. It relied upon § 706(d), which provides that the ability to convert stated in subsection (a) is precluded if the debtor may not be a debtor under the chapter to which conversion is sought, and § 1307(c), which provides that a Chapter 13 case may be converted to a case under Chapter 7 or dismissed for cause. The Court reasoned that "[n]othing in the text of either § 706 or § 1307(c) (or the legislative history of either section) limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor."[8]

One "cause" recognized by the courts as a basis to dismiss or convert a Chapter 13 case under § 1307(c) is bad faith, as evidenced by all of the facts and circumstances of the case.[9] Hence, a debtor can forfeit the right to convert to Chapter 13 by bad faith conduct. However, since denying a debtor's motion to convert from Chapter 7 to Chapter 13 has the same harsh effect as dismissal of a Chapter 13 case under § 1307(c), a court's reluctance to deny conversion should be the same as that exhibited toward motions to dismiss for cause.[10] Extreme circumstances are required.[11]

In *Gier*, the Tenth Circuit Court of Appeals enumerated the following factors to be considered when deciding a motion to dismiss or convert under § 1307(c):

> the nature of the debt, including the question of whether the debt
> would be nondischargeable in a Chapter 7 proceeding; the timing

---

[8] *Marrama*, 549 U.S. at 374-75.

[9] *Gier v. Farmers State Bank (In re Gier)*, 986 F.2d 1326 (10th Cir. 1993).

[10] *Condon v. Smith (In re Condon)*, 358 B.R. 317, 325-26 (6th Cir. BAP 2007).

[11] *See id.* at 326.

6

> of the petition; how the debt arose; the debtor's motive in filing the
> petition; how the debtor's actions affected creditors; the debtor's
> treatment of creditors both before and after the petition was filed;
> and whether the debtor has been forthcoming with the bankruptcy
> court and the creditors.[12]

Applying these factors in this case, the Court finds that the motion to convert to Chapter 13

should be granted and overrules Ms. Barger's objection.

The Debtors seek to repay their consumer debt through the Chapter 13 case, including

Debtor's debt to Ms. Barger. A portion of that debt exists because Debtor guaranteed payment

of his son's attorneys fees owed to Ms. Barger. The majority of the claim, however, is for the

allegedly willful and malicious publication of two letters and an affidavit relating to the

investigation of an ethical complaint against Ms. Barger that was initiated by a disgruntled

former employee. Although Ms. Barger asserts substantial liability and nondischargeability of

that debt if the case proceeded under Chapter 7, there has been no determination of either

assertion. Given Debtor's inability to read English and the circumstances surrounding the

apparent purpose of the allegedly defamatory documents, the Court finds uncertainty as to

liability and nondischargeability.

As to the timing of the motion, the motion to convert was filed in response to Ms.

Barger's filing of her nondischargeability complaint. The Debtors state they did so to avoid the

costs of litigation.

The debt to Ms. Barger arose because of her representation of Debtor's son. The contract

debt is based upon a guarantee. The claim for tort damages is based upon Debtor's providing

information relating to a disciplinary complaint. Participation in disciplinary procedures is

---

[12] *In re Gier*, 986 F.2d at 1329 (quoting *In re Love*, 957 F.2d 1350, 1357 (7th Cir. 1992)).

encouraged as a matter of public policy. The Kansas Supreme Court, through Rule 223,[13] grants judicial immunity to participants in disciplinary proceedings.

The Debtors have been forthright about their motives for conversion. They seek to avoid litigation of the dischargeability complaint filed by Ms. Barger.

The Debtors' action in seeking conversion may be detrimental to Ms. Barger, if one assumes she would prevail on her dischargeability complaint and eventually recover from Debtor. There is no evidence that the Debtors' actions toward creditors in general was wrongful or that conversion may be harmful to any creditors other than Ms. Barger. The Debtors' conduct regarding creditors both before and after the filing for relief does not evidence bad faith.

The Debtors have been forthcoming with the bankruptcy court and creditors. There is no evidence that assets were concealed, income misstated, or liabilities erroneously stated. There are no allegations of prepetition transfers, fraud, or manipulation of financial affairs. The only error in the Debtors' schedules pointed out by Ms. Barger is the failure to disclose their intent to surrender a rental house to the creditor holding a mortgage on the property. Despite such omission, Debtor testified that they intend to surrender the property, so the omission is of limited consequence. There is no evidence that the Debtors have not fully cooperated and performed the duties of debtors during the pendency of the case.

---

[13] Kansas Supreme Court Rule 223 provides:

> Complaints, reports, or testimony in the course of disciplinary proceedings under these Rules shall be deemed to be made in the course of judicial proceedings. All participants shall be entitled to judicial immunity and all rights, privileges and immunities afforded public officials and other participants in actions filed in the courts of this state.

8

Based upon the factors identified by the Tenth Circuit for purposes of good faith under § 1307(c), the Court finds that the only circumstance which could even suggest bad faith is the Debtors' motivation for conversion and its relationship to the nondischargeability complaint filed by Ms. Barger. The Court finds that this circumstance, standing alone, is insufficient to deny conversion. The Court does not question the Debtors' honesty and intent to faithfully perform under Chapter 13. Avoiding litigation of the Finney County case undoubtedly was a motive the Debtors had in filing this case. There are many reasons for filing bankruptcy, and few if any constitute bad faith, however detrimental they may be to creditors, either collectively or individually. For example, it is generally accepted that debtors may in good faith file for relief in response to a mortgage foreclosure action or attempts by creditors to repossess collateral. A motive for conversion focused upon avoiding the immediate consequences of actions by a single creditor likewise does not constitute bad faith.

The Debtors were eligible for Chapter 13 when they initially filed for bankruptcy. The Court finds in this case, it was not bad faith for them to wait to convert to Chapter 13 until after the filing of a dischargeability complaint. Both Chapters 7 and 13 are available to honest and unfortunate debtors, and debtors have a right to choose the chapter which best suits their circumstances. If the Debtors had not filed a Chapter 7 case but initially filed for relief under Chapter 13, there would be no basis for dismissal under § 1307. The fact that the case was initiated under Chapter 7 does not change the good faith analysis. The rationale for denying conversion in *Marrama* was that the case would have been subject to immediate dismissal if conversion were allowed. That circumstance is not present here.

9

**CONCLUSION.**

For the foregoing reasons, the Debtors' motion to convert from Chapter 7 to Chapter 13 under § 506(a) is granted, and Ms. Barger's objection to conversion is denied.

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. A judgment based upon this ruling will be entered on a separate document and, as provided by Federal Rule of Bankruptcy Procedure 9021, become effective when it is entered on the docket for this case.

**IT IS SO ORDERED.**

### #